# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### MONROE DIVISION

LUCAS MCLAUGHLIN                                    CIVIL ACTION NO. 18-0704

                                                   SECTION P

VS.

                                                   JUDGE TERRY A. DOUGHTY

CHAD LEE, ET AL.                                   MAG. JUDGE KAREN L. HAYES

## REPORT AND RECOMMENDATION

Plaintiff Lucas McLaughlin, an inmate at Tensas Parish Detention Center proceeding pro se and in forma pauperis, filed the instant Complaint on May 24, 2018, under 42 U.S.C. § 1983. He names the following Defendants: Warden Chad Lee, Assistant Warden Michael Enfinger, and an unidentified captain.[1]  For the following reasons, it is recommended that Plaintiff's claims be **DISMISSED WITH PREJUDICE**.

## Background

Plaintiff alleges that he is a Muslim and that there are no services for Muslim inmates at Franklin Parish Detention Center ("FPDC").  [doc. # 1].  He notified Assistant Warden Enfinger that he and over thirty other Muslim inmates desired services, but Enfinger only offered to transfer Plaintiff to a facility that had Muslim services.  *Id.* at 1-2.  Plaintiff "wrote over ten letters to Defendants Lee and Enfinger in an attempt to obtain Muslim services . . . all to no avail."  *Id.* at 3.  Plaintiff alleges further:

> Muslims fasting are made to refuse their lunch meal and then accept a styrofoam tray for last chow at around 3 p.m.  The Muslim must then hold the styrofoam tray until around 8 p.m. when the fast is broken.  Meals such as nachos are then inedible

---

[1] This matter has been referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the Court.

because they become stale and unreheatable. [sic].

[doc. # 9, p. 5].

Plaintiff also claims that an "inmate counsel" at the law library would not allow him to research case law. [doc. # 1, p. 2]. Relatedly, he claims that the law library is deficient because he "could not look at any Federal Reporters[] or state jurisprudence . . . ." *Id.* at 3.

Plaintiff further claims that, under a policy instituted by Warden Chad Lee, officials open his legal mail, copy it, give him the copies, and then destroy the original documents. [doc. # 13, p. 2]. Warden Chad Lee also banned inmates from receiving books through the mail, including the Quran and legal books. *Id.*

On September 5, 2018, Plaintiff raised a new claim of retaliation, alleging that, on August 31, 2018, an unidentified captain confiscated his C.D. player and his hygiene items and then transferred him to Tensas Detention Center. [doc. #s 15, 21]. These alleged retaliatory actions occurred shortly after a FPDC official signed a financial certificate for Plaintiff, certifying the amount of money in Plaintiff's account. *Id.*

Plaintiff moves for a preliminary injunction, he seeks to certify a class of similarly-situated inmates, and he seeks appointment of counsel. [doc. # 1, p. 4]. He also asks the Court to order Defendants to allow Ju'mah prayer every Friday, to "allow a Muslim community to be established at FPDC," to allow Muslims to hold services three times each week, to compensate the Muslim inmates "for the hardships suffered during the fast of Ramadan," and to update the law library. [doc. #s 1, p. 4; 9, p. 6]. Finally, with respect to his retaliation claim, he seeks punitive damages and compensation for his confiscated property. [doc. # 15, p. 2].

## Law and Analysis

### 1. Preliminary Screening

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[2] See *Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir.1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2) (B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Likewise, a complaint fails to state a claim upon which relief can be granted if it appears that no relief could

---

[2] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft*, 556 U.S. at 662; *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

## 2. Class Certification

Plaintiff seeks to certify a class of allegedly similarly-situated inmates with claims common to his. [doc. # 1, p. 4]. In order for a lawsuit to be certified as a class action under Federal Rule of Civil Procedure 23, the mover must prove that the four prerequisites found in Rule 23(a) and the two additional requirements in Rule 23(b) are met. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 623 (5th Cir. 1999). Under FED. R. CIV. P. 23(a), an action may be maintained as a class action if it meets the criteria of numerosity, commonality, typicality, and adequacy of representation. *McGrew v. Texas Bd. Of Pardons and Paroles*, 47 F.3d 158, 161 (5th Cir. 1995). The requirements for Rule 23(b) "are 'predominance' and 'superiority':

'Common questions must predominate over any questions affecting only individual members,' and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'" *Id.* (citing *Anchem Products v. Windsor*, 521 U.S. 591 (1997)). Courts have wide discretion in deciding whether to certify a proposed class. *Id.* at 161.

Here, Plaintiff should not be permitted to litigate his claims as a class action. First, Plaintiff makes no effort to demonstrate that he would be an adequate representative. The Fifth Circuit has recognized that "[t]he adequacy requirement mandates an inquiry into [1] the zeal and competence of the representative's counsel and . . . [2] the willingness and ability of the representative to take an active role in and control the litigation and to protect the interests of absentees[.]" *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001). Further, "it must appear that the representative will vigorously prosecute the interests of the class through qualified counsel." *Id.* at 482-83. The class representative must possess a sufficient level of knowledge and understanding to be capable of "controlling" or "prosecuting" the litigation. *Id.* (citation omitted).

Courts have recognized that a pro se prisoner is not adequate to represent the interests of his fellow inmates in a class action. See *Caputo v. Fauver*, 800 F. Supp. 168, 169-170 (D.N.J. 1992); *Fymbo v. State Farm Fire & Casualty Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000); *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975); *Ethnic Awareness Org. v. Gagnon*, 568 F. Supp. 1186, 1187 (E.D. Wis. 1983); see also *McGrew*, 47 F.3d at 162. As one judge observed:

> Because a lay person ordinarily does not possess the legal training and expertise necessary to protect the interests of a proposed class, courts usually will not certify a class represented by a pro se litigant. Ability to protect the interests of the class

depends in part on the quality of counsel, and the competence of a layman representing himself is generally too limited to allow him to risk the rights of others.

*James v. Corr. Corp. of Am.*, 2011 WL 6965799, n.1 (W.D. La. Dec. 7, 2011) report and recommendation adopted, 2012 WL 45410 (W.D. La. Jan. 9, 2012) (citations omitted).

Here, further, Plaintiff has not sufficiently alleged or demonstrated that the class of putative plaintiffs is so numerous that a class action suit would be the only adequate manner to resolve the claims.

Having determined that Plaintiff does not satisfy all of Rule 23(a)'s prerequisites, progressing to the second stage is unnecessary. Nonetheless, the Court further observes that Plaintiff has not satisfied the requirements for Rule 23(b)(2), which mandate that "(1) the class members must have been harmed in essentially the same way . . . [and] (2) the injunctive relief sought must be specific." *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 845 (5th Cir. 2012) (internal citations and quotation marks omitted). As the Supreme Court remarked:

> [t]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them. In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant. Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011) (emphasis in original) (internal quotation marks and citations omitted).

Here, Plaintiff seeks compensatory damages, which presumably will be tailored to his individual damages. Rule 23(b)(2), however, does not authorize a combination of individualized

and class-wide relief.  *Dukes, supra*.  Moreover, even if (because of the administrative

exhaustion requirement), Plaintiff's claims on behalf of the proposed class were necessarily

limited to prospective injunctive relief,[3] Plaintiff has not demonstrated that all members of the

proposed class are similarly situated such that the requested relief would benefit all equally.  See

e.g.*, Stukenberg, supra* (prospective class deficient for attempting to aggregate a plethora of

discrete claims challenging varying aspects of foster care system into one "super-claim").  As

Plaintiff has not met his Rule 23 burden, his motion for class-action certification should be

denied.

**3. Injunctive Relief**

Plaintiff asks the Court to order FPDC officials to allow Ju'mah prayer every Friday, to

"allow a Muslim community to be established at FPDC," to allow Muslims to hold services three

times each week, and to update the FPDC law library.  [doc. #s 1, p. 4; 9, p. 6].  Plaintiff,

however, is no longer confined at FPDC: he was transferred to Tensas Detention Center on

August 31, 2018.  [doc. # 15, pp. 1-2].  His transfer "rendered his claims for . . . injunctive relief

moot."  *Fluker v. King*, 679 F. App'x 325, 328 (5th Cir. 2017) (affirming dismissal of a Muslim

inmate's claims for injunctive relief under the First Amendment Free Exercise Clause and the

Religious Land Use and Institutionalized Persons Act ("RLUIPA") on grounds that the inmate

was transferred to another facility); *Busick v. Neal*, 380 F. App'x 392, 398 (5th Cir. 2010)

(reasoning that the plaintiff's freedom of religion claims were moot because the plaintiff was

transferred to a different facility).  Accordingly, Plaintiff's requests for injunctive relief should be

denied.

---

[3] See *Lineberry v. Lappin*, 2007 WL 891237 (N.D. Tex. Mar. 22, 2007).

**4. Retaliation**

Plaintiff claims that an unidentified captain retaliated against him for filing this proceeding against Warden Chad Lee and Assistant Warden Michael Enfinger.  [doc. # 15, pp. 1-2].  Shortly after a FPDC official signed a financial certificate for Plaintiff, certifying the amount of money in Plaintiff's account,[4] the captain confiscated Plaintiff's C.D. player, took his hygiene items, and then transferred him to Tensas Detention Center.  [doc. #s 15, pp. 1-2; 21, p. 1].

To prevail on a retaliation claim, a plaintiff must prove: (1) the exercise of a specific constitutional right; (2) the defendants' intent to retaliate for the exercise of that right; (3) a retaliatory adverse act; and (4) causation, which in this context means that, but for the retaliatory motive, the complained of incident would not have occurred.  *McDonald v. Steward*, 132 F.3d 225, 2331 (5th Cir. 1998).

A plaintiff must produce direct evidence of motivation or allege a chronology of events from which retaliation may be plausibly inferred.  *Woods v. Smith*, 60 F.3d 1161 (5th Cir. 1995). "Mere conclusory allegations of retaliation are insufficient[,] . . . a plaintiff must allege more than his personal belief that he has been the victim of retaliation."  *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999).  With respect to the third prong above, "Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights."  *Smith v. Hebert*, 533 F. App'x 479, 482 (5th Cir. 2013).

In *McClure v. Turner*, 481 F. App'x 167, 172-73 (5th Cir. 2012), a prisoner alleged that a correctional officer "searched his cell and stole his property in retaliation for his writing a

---

[4] The Court utilized this financial certificate to determine whether Plaintiff could proceed in forma pauperis.

grievance against [another correctional officer] and getting [the other officer] demoted more than two weeks earlier."  The Fifth Circuit Court of Appeals affirmed dismissal of the claim, reasoning:

> Aside from one incident preceding the other, we find no support for [the plaintiff's] retaliation allegation. The two-point chronology does not emit a plausible inference of retaliation. We therefore agree with the district court that the retaliation allegation is 'conclusory and [that] no causal connection can be inferred between the incident involving [the other correctional officer] and the subsequent incident involving [the retaliating officer].

*Id.*

Here, similar to the plaintiff in *McClure*, Plaintiff alleges that the unidentified captain confiscated his property and then transferred him in retaliation for suing other officials months earlier.  As in *McClure*, this two-point chronology does not amount to a plausible inference that, because Plaintiff sued the Warden and Assistant Warden in May of 2018, another official—with no alleged relationship to, agreement with, or instruction from the Warden or Assistant Warden—retaliated against Plaintiff months later.  While the captain arguably received notice of the suit the same day he allegedly retaliated—by virtue of Plaintiff's financial certificate, which included the Warden's name in the caption—Plaintiff does not advance this theory and, more important, the theory does not bestow any additional plausibility on Plaintiff's claim.  Accordingly, Plaintiff's retaliation claim should be dismissed.[5]

---

[5] The undersigned notes further that, to the extent Plaintiff impliedly faults the unidentified captain for confiscating his personal property without authorization (regardless of any retaliatory intent), the *Parratt/Hudson* bars Plaintiff's claim.  See *Hudson v. Palmer*, 468 U.S. 517 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981), overruled in part by *Daniels v. Williams*, 474 U.S. 327 (1986).  Plaintiff should pursue relief under state law in state court because Louisiana law provides adequate remedies for this alleged conduct.

**5. Transfer**

Plaintiff asks the Court to order the Warden to transfer him back to FPDC.  [doc. # 15, p. 2].  The Court, however, lacks authority to order a transfer.

Plaintiff is an inmate in the custody of the Louisiana Department of Public Safety and Corrections ("DOC").  Under Louisiana law, "any individual subject to confinement in a state adult penal or correctional institution shall be committed to the Department of Public Safety and Corrections and not to any particular institution within the jurisdiction of the department.  The secretary of the department may transfer an inmate from one such facility to another, insofar as the transfer is consistent with the commitment and in accordance with treatment, training, and security needs established by the department."  LA. REV. STAT. §15:824(A); see also *Clark v. Foti*, 50 F.3d 1032 (5th Cir. 1995) (observing that an inmate generally "has no constitutional right to be imprisoned in a particular institution, even if life in the one institution is significantly less desirable than in another[,]" and that the plaintiff did "not have a liberty interest in being confined in a state-run institution.").

Here, Plaintiff's placement lies solely in the purview of the DOC.  Accordingly, his request for a transfer should be denied.

**6. Compensatory Damages**

Plaintiff seeks compensation for the "hardships" that Muslim inmates "suffered during the fast of Ramadan."  [doc. # 9, p. 6].  Insofar as he seeks compensation on behalf of other inmates, he lacks standing.

Persons claiming a deprivation of constitutional rights are required to show a deprivation of their personal rights, as opposed to the rights of others.  *Coon v. Ledbetter*, 780 F.2d 1158,

1159 (5th Cir. 1986); *Barrows v. Jackson*, 346 U.S. 249, 255 (1953) ("Ordinarily, one may not claim standing in this Court to vindicate the constitutional rights of some third party.").  In *Resendez v. Texas*, 440 F. App'x 305, 306 (5th Cir. 2011), for example, the court held that, "to the extent that [the plaintiff] seeks to raise issues regarding the illegal confinement of other prisoners . . . , he lacks standing to bring those claims."); see *Kennedy v. Dallas Police Dep't*, 2007 WL 30260, at *2 (N.D. Tex. Jan.4, 2007) (plaintiff may bring a Section 1983 action only for deprivations he suffered).[6]

In addition, Plaintiff may not act as counsel for other inmates.  See, e.g., *Wade v. Carrollton–Farmers Branch Indep. Sch. Dist.*, 2009 WL 2058446, at *2 (N.D. Tex. July 14, 2009) ("[I]ndividuals who do not have a law license may not represent other parties even on a next friend basis.").  Parties can represent themselves or they can be represented by an attorney; they cannot be represented by a non-lawyer.  See *Gonzales v. Wyatt*, 157 F.3d 1016, 1021 (5th Cir. 1998) (citing *Eagle Associates v. Bank of Montreal*, 926 F.2d 1305, 1308-09 (2d Cir. 1991) (reviewing authority)).

Here, the Court will consider only the alleged harm that Plaintiff suffered.  Accordingly, the claims that he raises on behalf of other Muslim inmates should be dismissed.

Plaintiff does not allege that he personally suffered any "hardship" during the fast of Ramadan.   Even assuming he did, he does not allege that he suffered physical injury.  Under 42 U.S.C. § 1997e(e), "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody

_____

[6] See also *Gregory v. McKennon*, 430 F. App'x 306, 310 (5th Cir. 2011) (holding that the plaintiff "would lack standing to seek § 1983 damages for violations of other prisoners' rights . . . .").

without a prior showing of physical injury . . . ."  "[I]t is the nature of the relief sought, and not the underlying substantive violation, that controls: Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury." *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005).  Here, as Plaintiff only seeks compensatory damages for "hardship" he suffered stemming from inadequate food during Ramadan, the claim should be dismissed.

### 7. Copying and Destroying Mail

Plaintiff claims that, under a policy instituted by Warden Chad Lee, officials open his legal mail, copy it, give Plaintiff the copies, and then destroy the original documents.  [doc. # 13, p. 2].

To the extent Plaintiff claims that officials at the detention center opened his legal mail in his absence, [doc. # 12], he fails to state a plausible claim on which relief can be granted because "prison officials may open incoming legal mail to inspect it for contraband." *Jones v. Mail Room Staff*, 74 F. App'x 418, 419 (5th Cir. 2003) (citing *Brewer v. Wilkinson*, 3 F.3d 816, 820-21 (5th Cir. 1993)).  Similarly, "prisoners do not have a constitutional right to be present when privileged, legal mail is opened and inspected." *Collins v. Foster*, 603 F. App'x 273, 275 (5th Cir. 2015) (citing *Brewer*, 3 F.3d at 825).

Next, Plaintiff alleges that officials copied and destroyed blank forms he received from this Court.  [doc. #s 6-1, 6-2, 13].  He complains that the forms he received from the officials "were not the originals" and that this practice "leaves offenders without authentic documents . . . ."  [doc. # 13, pp. 2-3].  This claim should be dismissed because Plaintiff does not seek any relief

for these alleged actions.

Assuming, *arguendo*, that Plaintiff did seek relief, he fails to state a claim on which relief can be granted. To explain, Plaintiff's allegations implicate both his right of access to courts and his right to free speech. See *Walker v. Navarro Cty. Jail*, 4 F.3d 410, 413 (5th Cir. 1993). To succeed on a claimed denial of access to courts, a plaintiff must show that he lost an actionable claim or was prevented from presenting such a claim because of the alleged denial. *Lewis v. Casey*, 518 U.S. 343, 356 (1996); *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996) (holding that to state a sufficient claim of denial of access to the courts, plaintiff must demonstrate that his position as a litigant was prejudiced as a direct result of the denial of access). The "injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 353. Rather, a plaintiff must demonstrate that the lack of access prevented him from filing or caused him to lose a pending case that attacks either his conviction or seeks "to vindicate 'basic constitutional rights'" in a civil rights action under 42 U.S.C. § 1983. *Id.* at 353-54 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974)).

Here, Plaintiff does not allege that he lost an actionable claim or that a Defendant prevented him from presenting a claim to any court. Plaintiff alleges that FPDC officials destroyed blank forms—a blank in forma pauperis form and a blank complaint form. However, the forms that the Court mailed to Plaintiff, [doc. #s 6-1, 6-2], were themselves copies and did not, for example, contain original signatures. In other words, FPDC officials destroyed copies, and Plaintiff received copies of those copies. More important, Plaintiff filled out the forms and returned them to the Court, thus enabling him to initiate this proceeding and present his claims. [doc. #s 9, 14].

As to Plaintiff's free speech allegation, he again fails to allege that he suffered any cognizable harm for which the Court can grant relief.  See *Sandoval v. Fox*, 135 F. App'x 691, 691 (5th Cir. 2005) (affirming dismissal of a plaintiff's claim that guards improperly distributed prison mail because the plaintiff was not deprived of his mail and did not otherwise suffer any actual harm); see also *Northup v. Bell*, 2012 WL 2814307, at *4 (E.D. Tex. June 12, 2012), report and recommendation adopted, 2012 WL 2813973 (E.D. Tex. July 9, 2012) (dismissing a claim because the inmate "failed to show any harm as a result of the alleged practice of handing out mail without checking ID's.").  Accordingly, Plaintiff's claims relative to copying and destroying his mail should be dismissed.

**8. Banning Books Through the Mail**

Plaintiff alleges that Warden Chad Lee banned inmates from receiving books through the mail, including the Quran and legal books.  [doc. # 13, p. 2].  He adds that this "denies offenders access to the courts because offenders cannot get legal advisories or pro se instruction books." *Id.*

This claim should be dismissed because Plaintiff does not seek any relief.  The claim should also be denied because Plaintiff does not allege that he was deprived of a book as a result of the alleged ban.[7]

Even assuming Plaintiff did allege, for instance, that he was deprived of legal books, he does not allege that the mailing ban caused him to lose an actionable claim or that the ban

---

[7] Plaintiff does allege that he was deprived of certain "case law," but the alleged deprivation was not a result of the ban on receiving books in the mail.  [doc. # 1, p. 2].  Rather, an "inmate counsel" was responsible for the deprivation, and Plaintiff does not name the "inmate counsel" as a Defendant.  *Id.*

prevented him from presenting a claim to any court. See *Douthit v. Dean*, 568 F. App'x 336, 337 (5th Cir. 2014) (finding that the removal of law books did not affect the plaintiff's ability to present his claims to the court and noting that the plaintiff used a "form complaint" to present his claims). In fact, Plaintiff managed to file a Complaint on May 24, 2018, a second Complaint on August 28, 2018, an Amended Complaint on August 31, 2018, a Supplemental Brief on September 4, 2018, a second Amended Complaint on September 5, 2018, and a third Amended Complaint on September 13, 2018. [doc. #s 1, 9, 12, 13, 15, 21]. This claim should be dismissed.

### Recommendation

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff Lucas McLaughlin's claims be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state claims on which relief can be granted.

**IT IS FURTHER RECOMMENDED** that Plaintiff's Motion for Preliminary Injunction and Motion for Appointed Counsel, [doc. # 1], be **DENIED AS MOOT**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R.**

15

Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, this 17th day of September, 2018.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE